1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NATHANIEL POPLAR,                          No.  2:12-cv-1368 JAM KJN P

12              Petitioner,

13        v.                                    FINDINGS & RECOMMENDATIONS

14   M. BITER,

15              Respondent.

16

17   Introduction

18        Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2009 conviction for two counts of

20   robbery (Cal. Penal Code § 211), one count of assault with a firearm (Cal. Penal Code § 245(b)),

21   and having committed the crimes for the benefit of a gang (Cal. Penal Code § 186.22(b)(1)).

22   Petitioner is serving a sentence of 23 years.

23        This action is proceeding on the original petition filed May 21, 2012, as to the following

24   claims:  1) insufficient evidence to support the gang enhancement; 2) sentencing error;

25   3) conviction obtained by perjury; and 4) ineffective assistance of trial and appellate counsel.

26   After carefully considering the record, the undersigned recommends that the petition be denied.

27   ////

28   ////

1

1    <u>Standards for a Writ of Habeas Corpus</u>

2           An application for a writ of habeas corpus by a person in custody under a judgment of a

3    state court can be granted only for violations of the Constitution or laws of the United States.  28

4    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

5    application of state law.  See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>,

6    202 F.3d 1146, 1149 (9th Cir. 2000).

7           Federal habeas corpus relief is not available for any claim decided on the merits in state

8    court proceedings unless the state court's adjudication of the claim:

9                        (1) resulted in a decision that was contrary to, or involved an
                         unreasonable application of, clearly established Federal law, as
10                       determined by the Supreme Court of the United States; or

11                       (2) resulted in a decision that was based on an unreasonable
                         determination of the facts in light of the evidence presented in the
12                       State court proceeding.

13    28 U.S.C. § 2254(d).

14           Under section 2254(d)(1), a state court decision is "contrary to" clearly established United

15    States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in

16    Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a

17    decision of the Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537

18    U.S. 3, 7 (2002) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

19           Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court

20    may grant the writ if the state court identifies the correct governing legal principle from the

21    Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

22    case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

23    that court concludes in its independent judgment that the relevant state-court decision applied

24    clearly established federal law erroneously or incorrectly.  Rather, that application must also be

25    unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (it is "not enough

26    that a federal habeas court, in its independent review of the legal question, is left with a 'firm

27    conviction' that the state court was 'erroneous.'") (internal citations omitted).  "A state court's

28    determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

2

1    jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter,

2    131 S. Ct. 770, 786 (2011).

3         The court looks to the last reasoned state court decision as the basis for the state court

4    judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned decision,

5    "and the state court has denied relief, it may be presumed that the state court adjudicated the

6    claim on the merits in the absence of any indication or state-law procedural principles to the

7    contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be overcome by a showing

8    that "there is reason to think some other explanation for the state court's decision is more likely."

9    Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

10        "When a state court rejects a federal claim without expressly addressing that claim, a

11   federal habeas court must presume that the federal claim was adjudicated on the merits – but that

12   presumption can in some limited circumstances be rebutted."  Johnson v. Williams, 133 S. Ct.

13   1088, 1096 (Feb. 20, 2013).  "When the evidence leads very clearly to the conclusion that a

14   federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de

15   novo review of the claim.  Id., at 1097.

16        Where the state court reaches a decision on the merits but provides no reasoning to

17   support its conclusion, the federal court conducts an independent review of the record.

18   "Independent review of the record is not de novo review of the constitutional issue, but rather, the

19   only method by which we can determine whether a silent state court decision is objectively

20   unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

21   decision is available, the habeas petitioner has the burden of "showing there was no reasonable

22   basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

23   determine what arguments or theories supported or, . . . could have supported, the state court's

24   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

25   arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at

26   786.

27   ////

28   ////

1    Factual Background

2          The opinion of the California Court of Appeal contains a factual summary of petitioner's

3    offenses.  After independently reviewing the record, the undersigned finds this summary to be

4    accurate and adopts it herein:

5                 Substantive Offenses

6                 On April 12, 2008, at approximately 5:50 p.m., defendants robbed
                  K. and his ex-girlfriend, G., as they entered the gated complex to
7                 K.'s mother's apartment.

8                 Defendants walked up to the gate and Poplar pulled out a gun. With
                  Funches behind him, Poplar cocked the gun, pointed it at K.'s face,
9                 and said, "My kids have to eat and I want everything." K. emptied
                  his pockets and dropped their contents on the ground. About the
10                same time, Funches took G.'s purse from her arm.

11                After K. finished emptying his pockets, Poplar said, "I'm G
                  Parkway Mobb. I want everything. My kids got to eat." Poplar
12                clarified that "everything" meant "shoes, socks, everything." K.
                  recognized G Parkway Mobb as a "well known gang." He then
13                "kind of kn[e]w what [he was] dealing with" and knew to "get
                  through the situation as best as possible" and "just cooperate and
14                get it over with." It was then K. started taking off his clothes and
                  shoes. Poplar also asked G. to strip, but she said, "no."
15
                  As K. was taking off his shirt, Poplar began to pistol whip him. K.
16                saw the gun out of the corner of his eye and was able to duck, so the
                  gun nicked him in the back of his head, leaving a mark there.
17                Defendants picked up K.'s belongings from the ground and fled in a
                  vehicle.
18
                  K. called his mother and went to his best friend's house. G. reported
19                the crime to the police later that evening.

20                B

21                Bifurcated Gang Enhancement

22                Justin Saario was a detective with the Sacramento Police
                  Department's gang suppression unit. Based on his personal contact
23                with gang members and his training and experience, it was Saario's
                  opinion that G Parkway Mobb is a criminal street gang. The gang's
24                primary activities were assaults with deadly weapons, robberies,
                  burglaries, and possession of firearms. In one incident in June 2008,
25                a G Parkway Mobb member shot two women outside a rival gang
                  member's house in a drive-by shooting. In an incident in February
26                2007, the founder of G Parkway Mobb and a member of the gang
                  were found in possession of an assault weapon, and one was
27                determined to be a felon in possession of a firearm.

28    ////

                                            4

Detective Saario said Funches is a member of G Parkway Mobb. His opinion was based on Funches's admission to being a gang member, Funches's involvement in gang-related activity on a video clip, his recorded conversations in jail, three police reports describing Funches's behavior, and his involvement in the current crimes.

Detective Saario said Poplar was a member as well. His opinion was based on the three police reports referenced above that also mentioned Poplar, a video and a report in which Poplar admitted to associating with validated G Parkway Mobb members, and the current crimes. In Saario's experience, it was common for gang members to claim that they only associate with other gang members when they are actual members of the gang.

Gang members gained respect by committing crimes, particularly in the name of the gang and then "taking it to the next level" by committing acts of violence or embarrassment such as pistol whipping or stripping a person of clothing. Detective Saario saw this pattern "over and over," "not just committing the crime, but ... taking it to that next level, the stuff that's unnecessary, that they do to embarrass."

Presented with a factual scenario based on the current crimes, it was Detective Saario's opinion that the conduct of the armed perpetrator was committed for the benefit of or in association with G Parkway Mobb. Saario based his opinion on the fact the gunman told the victim to take off his clothes and pistol whipped him, which showed that he was "disrespecting" the victim, intimidating him and overpowering him. The gunman also announced he was with G Parkway Mobb. This behavior enhanced the reputation of the gang because it instilled fear and intimidation not only in the victim but also in the community and led to a "kind of forced respect" for the gang.

With respect to the unarmed perpetrator, Saario similarly said that his conduct was committed for the benefit of or in association with G Parkway Mobb. Saario based his opinion on the fact that both perpetrators were "working in concert with each other to commit this crime," i.e., one person announcing the gang's name and another collecting the clothing.

(ECF No. 23-1 at 3-6.)

Claim One—Alleged Insufficient Evidence

Petitioner alleges that there was insufficient evidence to support his conviction for the gang enhancement. The California Court of Appeal denied this claim on the merits. (Id. at 10-12.) The California Supreme Court denied this claim without comment or citation. (ECF No. 23-2). Accordingly, the undersigned considers the opinion of the California Court of Appeal, i.e., the last reasoned state court decision, as the basis for the state court judgment. Avila v. Galaza, 297

5

1    F.3d 911, 918 (9th Cir. 2002).

2       *Legal Standard*

3        In reviewing the sufficiency of the evidence in a habeas corpus proceeding, the test is

4    whether "any rational trier of fact could have found the essential elements of the crime beyond a

5    reasonable doubt."  Lewis v. Jeffers, 497 U.S. 764, 781 (1990) (internal quotation marks and

6    citation omitted); Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Cavazos v. Smith, 132 S. Ct.

7    2, 3–4 (2011) (per curiam) ("[I]t is the responsibility of the jury—not the court—to decide what

8    conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the

9    jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have

10    agreed with the jury.").  All evidence must be considered in the light most favorable to the

11    prosecution, Lewis, 497 U.S. at 782, and if the facts support conflicting inferences, a reviewing

12    court "must presume—even if it does not affirmatively appear in the record—that the trier of fact

13    resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

14    Jackson, 443 U.S. at 326; see Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Furthermore,

15    under section 2254(d), federal courts "must apply the standards of Jackson with an additional

16    layer of deference."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005); see Coleman v.

17    Johnson, 132 S. Ct. 2060, 2062, 2065 (2012) (stating that a state court determination that a jury's

18    finding was not so insupportable as to fall below the threshold of bare rationality is entitled to

19    considerable deference on habeas review).  Relief is available on a sufficiency of the evidence

20    claim only if the state court's adjudication of the claim involved an unreasonable application of

21    Jackson to the facts of the case.  Juan H., 408 F.3d at 1274–75.

22       *State Court Opinion*

23        The California Court of Appeal denied petitioner's insufficient evidence claim for the

24    reasons stated herein:

25            Defendants contend there was insufficient evidence of the gang
enhancement because nothing "other than the unsupported opinion
26            of the [People]'s gang expert" established the crimes were
"committed for the benefit of the gang or committed with the
27            specific intent to benefit the gang." Not so.

28    ////

Detective Saario gave his opinion based on a hypothetical that presented the facts of the current crimes that both the armed perpetrator (Poplar) and the unarmed perpetrator (Funches) committed the crime in association with and for the benefit of the G Parkway Mobb. Such an opinion was permissible. (<u>People v. Ward</u> (2005) 36 Cal.4th 186, 209-210.)

With respect to the armed perpetrator, Saario based his opinion on the fact Poplar told K. to take off certain items of clothing and pistol whipped him, which showed that he was "disrespecting" the victim, intimidating him, and overpowering him. Poplar also announced he was with G Parkway Mobb. This behavior enhanced the reputation of the gang because it instilled fear and intimidation not only in the victim but also in the community and led to a "kind of forced respect" for the gang.

As to the unarmed perpetrator, Saario based his opinion on the fact that Funches and Poplar were "working in concert with each other to commit this crime," i.e., one person announcing the gang's name and another collecting the clothing.

Focusing on Poplar's reference to his kids having to eat, defendants contend the crimes were meant to "put food on the table" instead of to benefit the gang. Defendants' argument turns the standard of review on its head. In essence, what they are asking us to do is sit as the finder of fact and credit Poplar's comments about his kids eating as being defendants' only motivation for the crimes. This we cannot do. Viewed in a light most favorable to the People, as we must on a sufficiency of evidence review (<u>People v. Sanghera</u> (2006) 139 Cal.App.4th 1567, 1574), the evidence we have just recounted showed that defendants committed the crimes for the benefit of G Parkway Mobb and to promote that gang.

(ECF No. 23-1 at 10-12.)

*Analysis*

California Penal Code section 186.22(b)(1) sets forth two elements to prove a street gang enhancement: First, the felony must be "committed for the benefit of, at the direction of, or in association with any criminal street gang," and second, "the felony must be committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1); <u>see also</u> <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102-03 (9th Cir. 2005); <u>People v. Morales</u>, 112 Cal.App.4th 1176, 1198 ("[S]pecific intent to benefit the gang is not required. What is required is the specific intent to promote, further, or assist in any criminal conduct by gang members ....") (internal quotation marks omitted).

////

"[T]o prove the elements of the criminal street gang enhancement, the prosecution may ... present expert testimony on criminal street gangs." People v. Hernandez, 33 Cal.4th 1040, 1047–48 (2004); see also People v. Gardeley, 14 Cal.4th 605, 617–20 (1996).[1]

"Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of ... a[ ] criminal street gang' within the meaning of section 186.22[, subdivision ](b)(1)." People v. Albillar, 51 Cal.4th 47, 63 (2010); People v. Vazquez, 178 Cal.App.4th 347, 354 (2009) (relying on expert opinion that the murder of a non-gang member benefited the gang because "violent crimes like murder elevate the status of the gang within gang culture and intimidate neighborhood residents who are, as a result, 'fearful to come forward, assist law enforcement, testify in court, or even report crimes that they're victims of for fear that they may be the gang's next victim or at least retaliated on by that gang.'")

Gang expert Saario testified that gang members engage in crimes of humiliation and violence in order to instill fear in the community so that the community will not come forward to law enforcement.  (RT at 860-61.)  Saario testified that pistol whipping is a way of instilling fear.

---

[1] Formerly, the Ninth Circuit, in applying the Jackson standard to a claim of sufficiency of the evidence under California Penal Code § 186.22, interpreted California law to require that there be sufficient evidence that a defendant's crime "was committed with the specific purpose of furthering other gang criminal activity," that is, activity other than the charged crime.  Garcia v. Carey, 395 F.3d 1099, 1103 (9th Cir. 2005).  See also Briceno v. Scribner, 555 F.3d 1069, 1079 n. 3 (9th Cir. 2009) ("Garcia concluded only that the specific intent required under § 186.22(b) must be to facilitate other gang activities by gang members").

Subsequently, the California Supreme Court, in People v. Albillar, 51 Cal.4th 47 (2010), clarified California law on this point; and the Ninth Circuit has recognized the resolution, stating that Albillar held that the specific intent to promote, further, or assist in any criminal conduct by gang members is unambiguous and applies to any criminal conduct, without a further requirement that the conduct be "apart from" the criminal conduct underlying the offense of conviction sought to be enhanced.  Emery v. Clark, 643 F.3d 1210, 1215 (9th Cir. 2011).  Accordingly, the Ninth Circuit stated, Albillar had specifically overruled Briceno and Garcia.  Id.  Thus, to sustain a gang enhancement under the Jackson standard, there must be evidence upon which a rational trier of fact could find that a defendant acted with the specific intent to promote, further, or assist in some type of criminal conduct by gang members, which may also include the crime of conviction. Emery, 643 F.3d at 1216.  See also Osika v. Patrick, 472 Fed. Appx. 441, 443 (9th Cir. 2012) (Albillar clarified that California Penal Code § 186.22(b)(1) does not require the specific intent to promote, further, or assist a gang-related crime; the statute only requires the specific intent to promote, further or assist criminal conduct by gang members).

(Id. at 861.)  Saario also testified that crimes of humiliation, such as making people take off their

clothes, also instill fear.  (Id. at 860.)  This testimony, combined with the evidence that petitioner

robbed the victims, pistol whipped and forced victim K. to take his clothes off, and stated that he

was "G Parkway Mobb," was sufficient evidence that petitioner's crimes were gang related.

While petitioner stated on more than one occasion that his kids needed to eat, the jury reasonably

found that petitioner's crimes were motivated to promote the gang.  This court must defer to the

jury's reasonable finding when multiple inferences are possible.  See Jackson, 443 U.S. at 326.

The finding by the California Court of Appeal that petitioner's gang enhancement was

supported by sufficient evidence was not an unreasonable application of clearly established

Supreme Court authority.  Accordingly, this claim should be denied.

Claim Two – Alleged Sentencing Error

Petitioner argues that the trial court erred in refusing to stay the punishment for his assault

conviction in light of the punishment for his robbery convictions.  The California Court of Appeal

denied this claim on the merits.  (ECF No. 23-1 at 12-13.)  The California Supreme Court denied

this claim without comment or citation.  (ECF No. 23-2).  Accordingly, the undersigned considers

the opinion of the California Court of Appeal, i.e., the last reasoned state court decision, as the

basis for the state court judgment.  Avila v. Galaza, 297 F.3d at 918.

The California Court of Appeal denied this claim for the reasons stated herein:

> Defendants contend the court erred in not staying the punishment
> for assault with a firearm in light of their punishment for robbery
> because the two crimes were incident to the same objective-
> obtaining property belonging to the victims.  Contrary to
> defendants' contention, the court's decision to impose multiple
> punishment is supported by substantial evidence. (People v. Garcia
> (2008) 167 Cal.App.4th 1550, 1564 [standard of review].)
>
> The question of whether the defendants harbored a single intent is a
> factual determination made by the trial court. (People v. Harrison
> (1989) 48 Cal.3d 321, 335.) On appeal we will sustain the court's
> implied factual determination if supported by substantial evidence.
> (See People v. Osband (1996) 13 Cal.4th 622, 730.)
>
> Here, there was substantial evidence defendants had different
> intents with the robbery and assault. They wanted to steal K.'s
> property and they wanted to enhance the reputation of the gang and
> instill fear in the community. The court could reasonably have
> found the pistol whipping unnecessary to the robbery and was

1
2
3
4
5
6
7
8
9
10
11

driven by the desire to instill fear of the gang instead of just obtain K.'s property. As Detective Saario testified, gang members gain respect by committing crimes, particularly in the name of the gang and then "taking it to the next level" by committing acts of violence or embarrassment such as pistol whipping or stripping a person of clothing. This evidence supports the trial court's determination defendants had different intents when robbing K. and when assaulting him.FN1

FN1. In their reply briefs, defendants contend the jury concluded they had only one intent in robbing and assaulting K. (i.e., furthering the reputation of the gang), as demonstrated by the true finding on the gang enhancement attached to the robbery count. Defendants' argument is inapposite because when it comes to a challenge regarding a defendant's sentence under Penal Code section 654, it is the factual determinations of the trial court that we review, whether explicit or implicit. (People v. Coleman (1989) 48 Cal.3d 112, 162"6.) So long as there was sufficient evidence to support a finding defendants formed a separate intent and objective for each offense for which they were sentenced, we uphold the sentence. As we have explained, there was.

12    (ECF No. 23-1 at 12-13.)

13         "The decision whether to impose sentences concurrently or consecutively is a matter of

14    state criminal procedure and is not within the purview of federal habeas corpus." Cacaperdo v.

15    Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir.

16    1989) (petitioner's claim that sentence violated California Penal Code § 654 is not cognizable on

17    federal habeas review).

18         Under narrow circumstances, a sentencing error may violate due process if the state court

19    misapplied its sentencing laws in an arbitrary, capricious or fundamentally unfair manner.

20    Richmond v. Lewis, 506 U.S. 40, 50 (1992) (the "constitutional question is whether [the

21    sentencing error] is so arbitrary or capricious as to constitute an independent due process ...

22    violation.") (internal quotation marks and citations omitted); Hicks v. Oklahoma, 447 U.S. 343,

23    (1980) (defendant's due process rights violated if state arbitrarily deprives defendant of state law

24    entitlement).

25         For the reasons stated by the California Court of Appeal, the undersigned finds that the

26    imposition of consecutive sentences for petitioner's robbery and assault convictions did not

27    violate fundamental fairness.  As noted by the California Court of Appeal, there was substantial

28    evidence that petitioner had different intents for the robberies and the assault.

10

1    Because the denial of this claim by the California Court of Appeal was not an

2    unreasonable application of clearly established Supreme Court authority, this claim should be

3    denied.

4    Claim Three – Conviction Obtained by Alleged Perjury

5    Petitioner alleges that victim K. committed perjury when he testified that petitioner

6    assaulted him.  In support of this claim, petitioner argues that victim G. testified that neither she

7    nor victim K. were hurt.

8    Petitioner raised this claim in a habeas corpus petition filed in the California Supreme

9    Court.  (Respondent's Lodged Document 7.)  The California Supreme Court denied this claim

10   without comment or citation.  (ECF 23-5 at 2.)  Accordingly, the undersigned conducts an

11   independent review of the record in order to determine whether the denial of this claim was

12   objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

13   Pursuant to clearly established federal law, "a conviction obtained by the knowing use of

14   perjured testimony must be set aside if there is any reasonable likelihood that the false testimony

15   could have affected the jury's verdict."  United States v. Bagley, 473 U.S. 667, 680 n.9 (1985);

16   see also Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004) ("The due process

17   requirement voids a conviction where the false evidence is 'known to be such by representatives

18   of the State.'" ) (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959) (2005).

19   In order to establish a claim for relief based on the prosecutor's introduction of perjured

20   testimony at trial, the petitioner must establish that: (1) the testimony or evidence was actually

21   false; (2) the prosecutor knew or should have known that the testimony or evidence was actually

22   false; and (3) the false testimony or evidence was material.  Hein v. Sullivan, 601 F.3d 897, 908

23   (9th Cir. 2010).

24   In addition, the Ninth Circuit has held that a conviction based on false testimony, even

25   without any evidence of prosecutorial misconduct in presenting the testimony, may result in a

26   violation of a defendant's due process rights under the Fourteenth Amendment.  Maxwell v. Roe,

27   628 F.3d 486, 506–07 (9th Cir. 2010) ("[A] defendant's due process rights were violated ... when

28   it was revealed that false evidence brought about a defendant's conviction."); Killian v. Poole,

11

1   282 F.3d 1204, 1208 (9th Cir. 2002) ( "[W]e assume without deciding that the prosecutor neither

2   knew nor should have known of Masse's perjury about his deal. Thus our analysis of the perjury

3   presented at Killian's trial must determine whether 'there is a reasonable probability that [without

4   all the perjury] the result of the proceeding would have been different.'").

5        At trial, victim K. testified that petitioner swung his weapon at him, he ducked and it

6   nicked victim K. in the back of his head.  (RT at 385.)  Victim K. testified that it felt like a bee

7   sting.  (Id.)  A photograph was introduced into evidence of the mark on the back of victim K's

8   head made by petitioner's gun.  (Id. at 386.)  When victim K. spoke with the police after the

9   incident, he told them that neither he nor victim G. were hurt.  (Id. at 411.)  Victim K. testified

10  that he did not mention the pistol whipping because he forgot about it.  (Id.)

11       At trial, victim G. testified that on the night of the incident she saw an injury on victim K.

12  behind his ear.  (Id. at 732.)  Following the incident, victim G. told law enforcement that she did

13  not see the gunman get physical with victim K., but later that night she saw a scrape behind

14  victim K.'s ear.  (Id. at 958.)

15       The record does not demonstrate that victim K. falsely testified that he was pistol whipped

16  by petitioner and suffered an injury to his head.  While victim G. testified that she did not see

17  petitioner "get physical" with victim K., victim K. testified that petitioner swung the gun at him,

18  nicking his head as he ducked.  Victim G. may not have remembered this brief incident or else

19  did not consider it as petitioner "getting physical" with Victim K.  See  U.S. v. Croft, 124 F.3d

20  1109, 1119 (9th Cir. 1997) ("That a witness may have made an earlier inconsistent statement, or

21  that other witnesses have conflicting recollections of events, does not establish that the testimony

22  offered at trial was false").  Victim K. also testified that he did not mention the injury to police

23  because he forgot about it.  Considering that the injury was not serious, victim K.'s failure to

24  mention it to police does not undermine his testimony regarding how the injury occurred.

25       Because petitioner has not demonstrated that victim K. testified falsely concerning his

26  injury, the undersigned finds that the denial of this claim by the California Supreme Court was

27  not an unreasonable application of clearly established authority.  Accordingly, this claim should

28  be denied.

Claim Four – Alleged Ineffective Assistance of Trial and Appellate Counsel

Petitioner alleges that his trial counsel was ineffective for failing to challenge the alleged perjured testimony of victim K., discussed in claim three.  Petitioner alleges that appellate counsel was ineffective for failing to raise a claim challenging this alleged perjured testimony in the direct appeal.

In the answer, respondent argues that these claims are not exhausted.  Respondent argues that no ineffective assistance of counsel claims were raised on direct review.  Respondent argues that although petitioner alleged ineffective assistance of trial and appellate counsel on state collateral review, that claim involved the failure of counsel to "present counter claim of insufficient evidence to support assault and gang enhancement," not the failure of counsel to allege prosecutorial misconduct.

The undersigned agrees with respondent that petitioner's ineffective assistance of trial and appellate counsel claims are not exhausted.  (See Respondent's Lodged Document 7.)  However, the court may address these unexhausted claims because they have no merit.  See 28 U.S.C. § 2254(b)(2) (an application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust state court remedies).  For the reasons stated herein, petitioner's ineffective assistance of trial and appellate counsel claim should be denied.

*Legal Standard*

A claim of ineffective assistance of appellate counsel is subject to the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Smith v. Robbins, 528 U.S. 259, 285 (2000).

In order to prevail on a Sixth Amendment claim based on ineffectiveness of counsel, a petitioner first must establish such counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687–88.  Second, the petitioner must establish prejudice resulting from his counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

13

*Analysis*

First addressing petitioner's ineffective assistance of trial counsel claim, it is unclear how petitioner is claiming trial counsel failed to challenge victim K.'s alleged perjured testimony. Petitioner's trial counsel cross-examined victim K. regarding his testimony that petitioner pistol whipped him with his gun and his failure to initially report the assault. (RT at 604-05.) Petitioner may be claiming that trial counsel should have filed a motion for a new trial based on the alleged perjury. However, as discussed above, petitioner has not demonstrated that victim K. committed perjury. For this reason, the undersigned finds that a motion for a new trial on grounds that victim K. committed perjury regarding the assault would have been denied.

Petitioner argues that appellate counsel was ineffective for failing to raise the perjury issue on appeal. To succeed on this claim, petitioner must demonstrate that appellate counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. Smith v. Robbins, 528 U.S. at 288. Second, petitioner must show that but for appellate counsel's unreasonable failure to raise a claim, he would have prevailed on his appeal. Id.

As discussed above, there is no merit to petitioner's claim that victim K. committed perjury. A claim alleging perjury by victim K. on appeal would have been denied. For this reason, petitioner's ineffective assistance of appellate counsel claim is without merit.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

////

////

////

////

14

1  objections shall be filed and served within fourteen days after service of the objections.  The

2  parties are advised that failure to file objections within the specified time may waive the right to

3  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  Dated:  November 20, 2013

5

6  pop1368.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28